## In re THE JACKSON STORES.

(District Court, S. D. Georgia, W. D. April 24, 1911. Supplementary Opinion, November 23, 1911. Additional Opinion, November 24, 1911.)

BANKRUPTCY (§ 384*)—COMPROMISE—STOCKHOLDERS' LIABILITY.

A compromise of suits against the stockholders of a bankrupt corporation, one of the terms of which is that a particular creditor shall, immediately before the petition in bankruptcy is filed, secure what seems to be very close to a fraudulent preference, will not be approved, all of the parties interested refusing to agree.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 384.*]

In the matter of the Jackson Stores, bankrupt. Application of D. H. Riley, trustee of the Jackson Stores, bankrupt, for authority to compromise suits pending in Laurens superior court against certain stockholders of bankrupt. Denied.

Talley & Heyward, for trustee.
John R. L. Smith, for objecting creditors.
G. H. Williams, for stockholders.

SPEER, Judge (orally). There is a good deal more involved in this case than the mere question of the amount of money the trustee can get in hand by the proposed compromise. So far as the matters have been disclosed by the statements of counsel, and we have had nothing else here, this is an exceedingly ugly failure. Sixty-two thousand dollars worth of goods in the Jackson Stores was destroyed by fire. There was $55,000 worth of insurance, which, so far as anything appears to the contrary, must have been held valid by any court of competent jurisdiction. Probably, therefore, the insurance covered the loss, with only a slight discrepancy. By some adjustment, which counsel for the Jackson Stores in passing states may be by management on their part, this $55,000 of fire insurance was settled for $25,-000. A large amount of that sum, $12,000 I think, though I am not sure about the figures, was appropriated to settle a debt alleged to be due one of the relatives of some member of the concern, which had been deposited there. It does not appear that the Jackson Stores was a bank. As I understand, it must be either a loan, or invested in the business, and unless it was represented by a mortgage, or other instrument which gave a lien to the depositor, whoever he or she may be, it was an ordinary debt and ought to have been settled like the claims of other general creditors by a pro rata share of the assets and values of the bankrupt estate. Now it is proposed to settle all of this by a payment of $12,500. There is a suit pending by the trustee

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the superior court of Laurens county to recover, if I understand the facts, on the personal liability of all the stockholders of this concern under a Georgia statute which makes the stockholders liable when they have not paid in their stock—makes the stockholder liable, as I understand it, for all the indebtedness of the concern. The various claims have not been passed upon by the referee in bankruptcy. It is proposed to stop the proceedings in bankruptcy, and this $12,500 is to be regarded as all of the assets of the estate.

The court does not feel that it can for a moment tolerate the idea of stamping with its approval a proceeding of this general character. For the court to refuse it and to disapprove it is worth more to the business integrity of the community than the $12,500 is worth to the creditors who will get a share of it. The court will have nothing to do with a transaction of that sort. The creditors may lose by it, but they probably will not in view of the character of the counsel who are representing the trustee in his suit in the superior court of Laurens county, and the character of counsel representing other creditors who are suing in this court to recover the same assets, namely, the personal liability of the stockholders of the Jackson Stores, because they have failed to pay in their stock. At least one of the defendants, it is conceded by counsel for the defendant, owns property in excess of $100,000.

Taking the case all together, whether I consider the interest of creditors or the interest of the community, or public policy which should control the action of the courts in such cases, I must disapprove the compromise and direct that the litigation proceed, unless a compromise is offered which is more in consonance with the ideas of mercantile integrity which this court indulges the hope it regards.

Application of D. H. Riley, trustee, for leave to compromise controversy between himself and C. S. Pope and others, stockholders of the Jackson Stores, bankrupt. Reference to special master. Report thereon, and exceptions thereto.

John R. L. Smith, for John E. Hurst & Co. and others.
John P. Ross, for Armstrong, Cator & Co., objecting creditors.
George S. Jones, for petitioning creditors.
Talley & Heyward, for trustee.

### Supplementary Opinion.

This case is materially different from that presented on the original petition. The petition was brief, and the court understood it to comprehend, not only the settlement of the proceedings brought by the trustee or the creditors, as the case might be, to recover this particular asset, viz., the liability of the stockholders, but to settle all of the other proceedings in bankruptcy against the Jackson Stores. The effect of it was to deny the right of the trustee to proceed in any way to collect any other funds which he could subject to the debts of that corporation. The whole thing seemed to be very bad, and it was, as it appeared to me, a proceeding brought for the benefit of the men who had accomplished the wrong, namely, Jackson and Tompkins. Now Jackson is dead, and Tompkins is reported to be in the last stages of

pulmonary consumption. Jackson can get no advantage from this settlement, and Tompkins' beneficial interest therein is very problematical. The present petition, too, states that it is not intended to compound or settle any proceeding whatever against these bankrupts, who seem to have been acting voluntarily. The parties wronged or the officers of the law are at liberty to proceed either in the bankruptcy court, or on the criminal side, if they think proper, to redress any wrong which an investigation might show to have been done.

As the case now appears, after a careful investigation by the referee, it seems merely an effort on the part of the trustee to secure a large value, namely, $12,500, which will pay 35 to 50 per cent. of the indebtedness of the estate. Jackson is dead, after having dissipated the assets beyond the hope of recovery. Also Mr. Talley, counsel for the trustee, has gone over the accounts of the corporation, produced all of the evidence of the payments, along with all of the checks, and declares in his place in open court that he is not able to discover anything wrong in the appropriation of the insurance money which this bankrupt concern had recovered. It appears, then, at this time, to be a case far less subject to the animadversions of the court which were properly made on the case as originally presented.

There is, however, one matter which seems to make a settlement difficult, and that is an imperative objection of one creditor represented by Judge Ross, Armstrong, Cator & Co. He insists that the debt of another creditor, John E. Hurst & Co., on which a payment of the sum of $1,500 has been made, should be expunged; and the referee also has reported that this claim should be expunged. It seems to the court that if the compromise is not agreed to, and if it is held down to the law as it relates to that particular debt, whatever may be the equities upon which Mr. Smith relies, the court will be obliged to approve the finding of the referee, sustaining the contentions of Judge Ross, and expunge the debt.

Since, however, the case seems to be one where the estate can now get a great benefit by the settlement, and since the men who worked the wrong and injury, if any, get no benefit from it, that the trustee can proceed as usual, and the proposition for compromise does not include, as the court thought it did, the settlement of the bankruptcy proceeding itself, I see no reason why the trustee should not be allowed to withdraw his motion to expunge this debt, and, if that is all, the settlement might be brought about. In other words, I would approve the settlement but for that pending issue, and, if that is withdrawn, I will approve it in view of the fact that in all probability the creditors would now get nothing if the settlement does not go through, and in view of the further fact that there can be apparently no punitive results brought by the management of the corporation by refusing the settlement. It is not contended that any of these stockholders, who now offer to put up the amount necessary for the compromise, had any connection whatever with the wrongs which seemed to the court were shown by the record at the time the original decision was made. They seem to be innocent of anything of that sort. If any wrong was done, it was done by the management or the manager himself, and he is dead, and that ends all earthly culpability so far as he is concerned.

I trust he may have even a more lenient judgment elsewhere, if he has not already received it.

If you can agree about this particular debt, the settlement can be made.

(Here a recess was taken in order that the parties might consider the suggestions of the court.)

Application of D. H. Riley, trustee, for leave to compromise suit against C. S. Pope and others, stockholders of the Jackson Stores, bankrupt. Reference to special master. Report thereon, and exceptions thereto.

John R. L. Smith, for John E. Hurst & Co. and others.
John P. Ross, for Armstrong, Cator & Co., objecting creditors.
George S. Jones, for petitioning creditors.
Talley & Heyward, for trustee.

## Additional Opinion.

There are a great many reasons why it would be to the advantage of this estate to approve this settlement. My great confidence in the referee, and the thoroughness and integrity of his investigations, his conclusion that it ought to be accepted weighs strongly with me. But there are other considerations in the case which seem to make it impossible for me in my attitude as judge of the bankruptcy court to approve a settlement, one of the terms of which is that a particular creditor shall, immediately before the petition in bankruptcy is filed, secure what seems to be not only a preference in violation of the bankruptcy law, but what seems very close to a fraudulent preference. Indeed, this might have been the subject of an indictment, criminal trial, and possibly conviction of the culprit, if it had been made a few hours later, instead of a few hours before the petition in bankruptcy was filed. The parties refusing to agree, no court ought to be asked to approve that thing. I am very sorry that I cannot oblige these gentlemen, who are so anxious to bring about this settlement. My attitude as judge, if I must act upon my own responsibility to the country, forbids me to approve it.

I will approve the settlement, however, if this $1,500 thus improperly obtained by Bourne immediately before the petition in bankruptcy was filed, with the evident knowledge on his part that bankruptcy was inevitable, is paid back into the hands of the trustee, but not otherwise.